# Exhibit 1
## Settlement Agreements

## <u>SETTLEMENT AGREEMENT AND RELEASE ("Agreement")</u>

Life Time, Inc. ("Employer") and Johnnie Walker, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Last Day of Employment.** Employee's last day of employment with Employer was on or about January 20, 2018 ("Separation Date").

2. **Consideration.** In consideration for signing this Agreement, and complying with its terms, Employer agrees:

a. to pay to Employee Seven Hundred Seven Dollars and Fifty-Four Cents ($707.54) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR.

b. to pay to Employee Seven Hundred Seven Dollars and Fifty-Four Cents ($707.54) as non-wage income to be reported by Employee as 1099 income within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

c. to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4. **General Release of Wage Claims, Claims Not Released and Related Provisions**

1

a.     **General Release of All Wage Claims**.  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

b.     **Claims Not Released.**  Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans as of the Separation Date; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

c.     **Governmental Agencies.**  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies.  However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.     **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

5.     **Acknowledgments and Affirmations.**

Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions,

and/or benefits which are due and payable as of the date Employee signs this Agreement.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

Employee shall not apply in the future for employment with Employer because of, among other things, irreconcilable differences with Employer.

6. **Characterization of Settlement and Return of Property**. If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

Employee affirms that Employee has returned all of Employer's property, documents, and/or any confidential information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at Employer's premises and that Employer is not in possession of any of Employee's property.

7. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9. **Amendment**. This Agreement may not be modified, altered or changed

3

By: _____
~~Duane Jeffries~~
Johnnie Walker

By: _____
Erik Lindseth
Senior Vice President and General Counsel

Date: 3 / 16 / 18 _____

Date: 3/26/18 _____

4836-8870-0766, v. 1

5

**SETTLEMENT AGREEMENT AND RELEASE ("Agreement")**

Life Time, Inc. ("Employer") and Andrea Smith, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1.   **Continuing Employment.**   Employee remains employed by Employer and such employment shall not be affected by this Agreement.

2.   **Consideration.**   In consideration for signing this Agreement, and complying with its terms, Employer agrees:

a.   to pay to Employee Two-Hundred Thirteen Dollars and Sixty-Six Cents ($213.66) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR.

b.   to pay to Two-Hundred Thirteen Dollars and Sixty-Six Cents ($213.66) as non-wage income to be reported by Employee as 1099 income within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

c.   to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3.   **No Consideration Absent Execution of this Agreement.**   Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

1

4.  **General Release of Wage Claims, Claims Not Released and Related Provisions**

a.  **General Release of All Wage Claims.** Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

b.  **Claims Not Released.** Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

c.  **Governmental Agencies.** Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.  **Collective/Class Action Waiver.** If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

5.  **Acknowledgments and Affirmations.**

Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs

2

this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits which are due and payable as of the date Employee signs this Agreement.

Employee further affirms that going forward, Employee will report all hours worked for Employer in Employer's Kronos timekeeping system.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

6. **Characterization of Settlement**. If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

7. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9. **Amendment**. This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10. **Entire Agreement.** This Agreement sets forth the entire agreement

3

between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

11.   **Counterparts and Facsimiles.**   This Agreement may be executed in counterparts, which together shall constitute a single Agreement. Each party may execute this Agreement and transmit it to the other party by facsimile, with each such facsimile deemed to be in all respects an original, manually executed document.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT.  EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By: _____
Andrea Smith

Date: _3/9/18_____

**Life Time, Inc.**

By: _____
Erik Lindseth
Senior Vice President and General Counsel

Date: _3/26/18_____

4840-1441-5198, v. 1

4

## SETTLEMENT AGREEMENT AND RELEASE ("Agreement")

Life Time, Inc. ("Employer") and Kelsey Amber Blevins, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1.   **Continuing Employment.**  Employee remains employed by Employer and such employment shall not be affected by this Agreement.

2.   **Consideration.**   In consideration for signing this Agreement, and complying with its terms, Employer agrees:

   a.   to pay to Employee Four Hundred Forty Seven Dollars and Forty Eight Cents ($447.48) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR.

   b.   to pay to Employee Four Hundred Forty Seven Dollars and Forty Eight Cents ($447.47) as non-wage income to be reported by Employee as 1099 income within ten (10)  business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

   c.   to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3.   **No Consideration Absent Execution of this Agreement.**   Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4.   **General Release of Wage Claims, Claims Not Released and Related Provisions**

1

a.     **General Release of All Wage Claims**.  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

b.     **Claims Not Released.**  Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

c.     **Governmental Agencies.**  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies.  However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.     **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

5.     **Acknowledgments and Affirmations.**

Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions,

and/or benefits which are due and payable as of the date Employee signs this Agreement.

Employee further affirms that going forward, Employee will report all hours worked for Employer in Employer's Kronos timekeeping system.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

6.   **Characterization of Settlement**.  If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

7.   **Governing Law and Interpretation.**  This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8.   **Nonadmission of Wrongdoing.**  The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9.   **Amendment**.  This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10.   **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties.  Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision

3

to accept this Agreement, except for those set forth in this Agreement.

11.    **Counterparts and Facsimiles.**    This Agreement may be executed in counterparts, which together shall constitute a single Agreement. Each party may execute this Agreement and transmit it to the other party by facsimile, with each such facsimile deemed to be in all respects an original, manually executed document.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By: _____          Life Time, Inc.
Kelsey Blevins                        By: _____
                                          Erik Lindseth
                                      Senior Vice President and General Counsel

Date: 3/24/18                          Date: 3/26/18

4812-6716-3488, v. 1

4

## SETTLEMENT AGREEMENT AND RELEASE ("Agreement")

Life Time, Inc. ("Employer") and Todd Ortowski, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1.    **Continuing Employment.** Employee remains employed by Employer and such employment shall not be affected by this Agreement.

2.    **Consideration.**  In consideration for signing this Agreement, and complying with its terms, Employer agrees:

a.    to pay to Employee Seven Hundred Dollars ($700) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN),* Case 1:18-cv-00293-ELR.

b.    to pay to Employee Seven Hundred Dollars ($700) as non-wage income to be reported by Employee as 1099 income within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN),* Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

c.    to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN),* Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN),* Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN),* Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3.    **No Consideration Absent Execution of this Agreement.**  Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4.    **General Release of Wage Claims, Claims Not Released and Related Provisions**

a.    **General Release of All Wage Claims**.  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

b.    **Claims Not Released.**  Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

c.    **Governmental Agencies.**  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies.  However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.    **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

5.    **Acknowledgments and Affirmations.**

Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits which are due and payable as of the date Employee signs this Agreement.

2

Employee further affirms that going forward, Employee will report all hours worked for Employer in Employer's Kronos timekeeping system.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

6.  **Characterization of Settlement**.  If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

7.  **Governing Law and Interpretation.**  This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8.  **Nonadmission of Wrongdoing.**  The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9.  **Amendment**.  This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10. **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties.  Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

3

11.   **Counterparts and Facsimiles.**   This Agreement may be executed in counterparts, which together shall constitute a single Agreement. Each party may execute this Agreement and transmit it to the other party by facsimile, with each such facsimile deemed to be in all respects an original, manually executed document.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT.   EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By: _____
Todd Ortowski

Date: __3/8/18__

4835-9681-9294, v. 1

Life Time, Inc.

By: _____
Erik Lindseth
Senior Vice President and General Counsel

Date: __3/26/18__

4

## SETTLEMENT AGREEMENT AND RELEASE ("Agreement")

Life Time, Inc. ("Employer") and Chris Momongan, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Continuing Employment.** Employee remains employed by Employer and such employment shall not be affected by this Agreement.

2. **Consideration.** In consideration for signing this Agreement, and complying with its terms, Employer agrees:

   a. to pay to Employee Four Hundred Thirty-Five Dollars and Twenty Cents ($435.20) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR.

   b. to pay to Employee Four Hundred Thirty-Five Dollars and Nineteen Cents ($435.19) as non-wage income to be reported by Employee as 1099 income within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

   c. to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

1

4. **General Release of Wage Claims, Claims Not Released and Related Provisions**

    a. **General Release of All Wage Claims.** Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

    b. **Claims Not Released.** Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

    c. **Governmental Agencies.** Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

    d. **Collective/Class Action Waiver.** If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

5. **Acknowledgments and Affirmations.**

    Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs

this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits which are due and payable as of the date Employee signs this Agreement.

Employee further affirms that going forward, Employee will report all hours worked for Employer in Employer's Kronos timekeeping system.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

6. **Characterization of Settlement**.  If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

7. **Governing Law and Interpretation.**  This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.   Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8. **Nonadmission of Wrongdoing.**  The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9. **Amendment**.  This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10. **Entire Agreement.**  This Agreement sets forth the entire agreement

3

between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

11. **Counterparts and Facsimiles.** This Agreement may be executed in counterparts, which together shall constitute a single Agreement. Each party may execute this Agreement and transmit it to the other party by facsimile, with each such facsimile deemed to be in all respects an original, manually executed document._

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By: _____
Chris Momongan

Life Time, Inc.

By: _____
Erik Lindseth
Senior Vice President and General Counsel

Date: 3/9/2018

Date: 3/26/18

4846-9402-3006, v. 1

4

## SETTLEMENT AGREEMENT AND RELEASE ("Agreement")

Life Time, Inc. ("Employer") and William Mayo, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1.     **Continuing Employment.**  Employee remains employed by Employer and such employment shall not be affected by this Agreement.

2.     **Consideration.**   In consideration for signing this Agreement, and complying with its terms, Employer agrees:

a.     to pay to Employee Two Hundred Dollars ($200) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR.

b.     to pay to Employee Two Hundred Dollars ($200) as non-wage income to be reported by Employee as 1099 income within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

c.     to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3.     **No Consideration Absent Execution of this Agreement.**   Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4.     **General Release of Wage Claims, Claims Not Released and Related Provisions**

1

a.    **General Release of All Wage Claims**.  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

b.    **Claims Not Released.**  Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

c.    **Governmental Agencies.**  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.    **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

5.    **Acknowledgments and Affirmations.**

Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits which are due and payable as of the date Employee signs this Agreement.

2

Employee further affirms that going forward, Employee will report all hours worked for Employer in Employer's Kronos timekeeping system.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

6. **Characterization of Settlement**. If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

7. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9. **Amendment**. This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

3

promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

    11.    **Counterparts and Facsimiles.**    This Agreement may be executed in counterparts, which together shall constitute a single Agreement. Each party may execute this Agreement and transmit it to the other party by facsimile, with each such facsimile deemed to be in all respects an original, manually executed document.

    **EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

    **EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

    The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By: _____
    William Mayo

Date: 3 | 7 | 18 _____

4850-7360-7518, v. 1

**Life Time, Inc.**

By: _____
        Erik Lindseth
Senior Vice President and General Counsel

Date: 3/26/18 _____

4

## SETTLEMENT AGREEMENT AND RELEASE ("Agreement")

Life Time, Inc. ("Employer") and Jack Lenardson, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Last Day of Employment.** Employee's last day of employment with Employer was on or about January 7, 2017 ("Separation Date").

2. **Consideration.** In consideration for signing this Agreement, and complying with its terms, Employer agrees:

      a. to pay to Employee Seven Hundred Dollars ($700) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR.

      b. to pay to Employee Seven Hundred Dollars ($700) as non-wage income to be reported by Employee as 1099 income within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

      c. to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4. **General Release of Wage Claims, Claims Not Released and Related Provisions**

1

    a.    **General Release of All Wage Claims**.  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

    b.    **Claims Not Released.**  Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans as of the Separation Date; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

    c.    **Governmental Agencies.**  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

    d.    **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

    5.    **Acknowledgments and Affirmations.**

    Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions,

and/or benefits which are due and payable as of the date Employee signs this Agreement.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

Employee shall not apply in the future for employment with Employer because of, among other things, irreconcilable differences with Employer.

6.     **Characterization of Settlement and Return of Property**.  If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

Employee affirms that Employee has returned all of Employer's property, documents, and/or any confidential information in Employee's possession or control.  Employee also affirms that Employee is in possession of all of Employee's property that Employee had at Employer's premises and that Employer is not in possession of any of Employee's property.

7.     **Governing Law and Interpretation.**  This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8.     **Nonadmission of Wrongdoing.**   The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9.     **Amendment**.  This Agreement may not be modified, altered or changed

3

except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

11. **Counterparts and Facsimiles.** This Agreement may be executed in counterparts, which together shall constitute a single Agreement. Each party may execute this Agreement and transmit it to the other party by facsimile, with each such facsimile deemed to be in all respects an original, manually executed document.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

Life Time, Inc.

By: _____        By: _____
Jack Lenardson                              Erik Lindseth
                                        Senior Vice President and General Counsel

Date: 3-6-18                            Date: 3/26/18

4811-0113-0846, v. 2

4

## <u>SETTLEMENT AGREEMENT AND RELEASE ("Agreement")</u>

Life Time, Inc. ("Employer") and Duane Jeffries, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **<u>Continuing Employment</u>.** Employee remains employed by Employer and such employment shall not be affected by this Agreement.

2. **<u>Consideration</u>.** In consideration for signing this Agreement, and complying with its terms, Employer agrees:

      a.    to pay to Employee Seven Hundred Seven Dollars and Fifty-Four Cents ($707.54) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR.

      b.    to pay to Employee Seven Hundred Seven Dollars and Fifty-Four Cents ($707.54) as non-wage income to be reported by Employee as 1099 income within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

      c.    to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3. **<u>No Consideration Absent Execution of this Agreement</u>.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4. **<u>General Release of Wage Claims, Claims Not Released and Related Provisions</u>**

1

a.  **General Release of All Wage Claims**.  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

b.  **Claims Not Released.**  Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

c.  **Governmental Agencies.**  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies.  However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.  **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

5.  **Acknowledgments and Affirmations.**

Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions,

2

and/or benefits which are due and payable as of the date Employee signs this Agreement.

Employee further affirms that going forward, Employee will report all hours worked for Employer in Employer's Kronos timekeeping system.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

6.    **Characterization of Settlement**.  If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

7.    **Governing Law and Interpretation.**  This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8.    **Nonadmission of Wrongdoing.**   The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9.    **Amendment**.  This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10.    **Entire Agreement.**   This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties.   Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision

to accept this Agreement, except for those set forth in this Agreement.

11.   **Counterparts and Facsimiles.**   This Agreement may be executed in counterparts, which together shall constitute a single Agreement. Each party may execute this Agreement and transmit it to the other party by facsimile, with each such facsimile deemed to be in all respects an original, manually executed document.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT.   EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By: _____
Duane Jeffries

**Life Time, Inc.**

By: _____
Erik Lindseth
Senior Vice President and General Counsel

Date: 3 / 7 / 18 _____

Date: 3/26/18 _____

4827-6536-4062, v. 1

4

## SETTLEMENT AGREEMENT AND RELEASE ("Agreement")

Life Time, Inc. ("Employer") and James Harvey, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Continuing Employment.** Employee remains employed by Employer and such employment shall not be affected by this Agreement.

2. **Consideration.** In consideration for signing this Agreement, and complying with its terms, Employer agrees:

    a. to pay to Employee Four-Hundred Eighty Six Dollars and Eighty-Two Cents ($486.82) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR.

    b. to pay to Four-Hundred Eighty Six Dollars and Eighty-Two Cents ($486.82) as non-wage income to be reported by Employee as 1099 income within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

    c. to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4. **General Release of Wage Claims, Claims Not Released and Related Provisions**

1

a.     **General Release of All Wage Claims**.  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

b.     **Claims Not Released.**  Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

c.     **Governmental Agencies**.  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies.  However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.     **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

5.     **Acknowledgments and Affirmations.**

Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions,

and/or benefits which are due and payable as of the date Employee signs this Agreement.

Employee further affirms that going forward, Employee will report all hours worked for Employer in Employer's Kronos timekeeping system.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

6. **Characterization of Settlement**. If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

7. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9. **Amendment**. This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision

3

to accept this Agreement, except for those set forth in this Agreement.

11.   **Counterparts and Facsimiles.**     This Agreement may be executed in counterparts, which together shall constitute a single Agreement. Each party may execute this Agreement and transmit it to the other party by facsimile, with each such facsimile deemed to be in all respects an original, manually executed document.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT.  EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By: _____
James Harvey

Date: **3/6/18**

4851-5598-6782, v. 1

**Life Time, Inc.**

By: _____
Erik Lindseth
Senior Vice President and General Counsel

Date: **3/26/18**

4

## SETTLEMENT AGREEMENT AND RELEASE ("Agreement")

Life Time, Inc. ("Employer") and Eric Wyatt, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Last Day of Employment.** Employee's last day of employment with Employer was on or about __MARCH 2017__ ("Separation Date").

2. **Consideration.** In consideration for signing this Agreement, and complying with its terms, Employer agrees:

   a. to pay to Employee Seventy-Seven Dollars and Forty-Three Cents ($77.43) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR.

   b. to pay to Seventy-Seven Dollars and Forty-Three Cents ($77.43) as non-wage income to be reported by Employee as 1099 income within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

   c. to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4. **General Release of Wage Claims, Claims Not Released and Related Provisions**

1

a.      **General Release of All Wage Claims.**  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

b.      **Claims Not Released.**  Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans as of the Separation Date; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

c.      **Governmental Agencies.**  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.      **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

5.      **Acknowledgments and Affirmations.**

Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions,

and/or benefits which are due and payable as of the date Employee signs this Agreement.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

Employee shall not apply in the future for employment with Employer because of, among other things, irreconcilable differences with Employer.

6.   **Characterization of Settlement and Return of Property.** If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

Employee affirms that Employee has returned all of Employer's property, documents, and/or any confidential information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at Employer's premises and that Employer is not in possession of any of Employee's property.

7.   **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8.   **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9.   **Amendment**. This Agreement may not be modified, altered or changed

3

except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10.   **Entire Agreement.**   This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties.   Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

11.   **Counterparts and Facsimiles.**   This Agreement may be executed in counterparts, which together shall constitute a single Agreement. Each party may execute this Agreement and transmit it to the other party by facsimile, with each such facsimile deemed to be in all respects an original, manually executed document.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT.   EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By: _____
    Eric Wyatt

Life Time, Inc.

By: _____
    Erik Lindseth
Senior Vice President and General Counsel

Date: 3/19/18

Date: 3/26/18

4829-9146-3774, v. 1

4

## SETTLEMENT AGREEMENT AND RELEASE ("Agreement")

Life Time, Inc. ("Employer") and Alexander Case, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Employee"), agree that:

1. **Continuing Employment.** Employee remains employed by Employer and such employment shall not be affected by this Agreement.

2. **Consideration.** In consideration for signing this Agreement, and complying with its terms, Employer agrees:

      a.      to pay to Employee Seven Hundred Ten Dollars and Sixty-One Cents ($710.61) as W-2 wage income minus lawful deductions within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; and (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR.

      b.      to pay to Employee Seven Hundred Ten Dollars and Sixty-One Cents ($710.61) as non-wage income to be reported by Employee as 1099 income within ten (10) business days after the latter of: (1) Employer's receipt of an original of this Agreement signed by Employee; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) Employee's provision of a W-9 form to Employer.

      c.      to pay to The Sharman Law Firm a total of Three-Thousand, Two-Hundred Seventeen Dollars and Eighty-Two cents ($3,217.82) for all of the settlement agreements submitted and approved in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR as non-wage income, to be reported as 1099 income, within ten (10) business days after the latter of: (1) Employer's receipt of an original of all Agreements signed by each Employee in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; (2) the United States District Court for the Northern District of Georgia's approval of the settlement in the matter captioned *Lenardson, et al. v. Life Time Fitness, Inc. (MN)*, Case 1:18-cv-00293-ELR; and (3) The Sharman Law Firm provision of a W-9 form to Employer.

3. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4. **General Release of Wage Claims, Claims Not Released and Related Provisions**

1

a.   **General Release of All Wage Claims**.  Employee knowingly and voluntarily releases and forever discharges Employer, its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the Fair Labor Standards Act ("FLSA") and the Georgia Wage Payment and Work Hour Laws as well as any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, except as to the payment to The Sharman Law Firm described in paragraph 2c above.

b.   **Claims Not Released.**  Employee is not waiving any rights he may have to: (a) his own vested accrued employee benefits under Employer's health, welfare, or retirement benefit plans; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

c.   **Governmental Agencies.**  Nothing in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies.  However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

d.   **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

5.   **Acknowledgments and Affirmations.**

Employee affirms that as a result of the consideration paid in paragraph 2 above, Employee has now reported and been paid for all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions,

2

and/or benefits which are due and payable as of the date Employee signs this Agreement.

Employee further affirms that going forward, Employee will report all hours worked for Employer in Employer's Kronos timekeeping system.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud.

6.      **Characterization of Settlement**.  If Employee is asked by any person about the Lawsuit, Employee shall state *only* "The matter is resolved" but shall *not* state or imply that he won the Lawsuit or that the Lawsuit was settled or resolved on favorable terms or to his satisfaction.

7.      **Governing Law and Interpretation.**  This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8.      **Nonadmission of Wrongdoing.**   The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9.      **Amendment**.  This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10.     **Entire Agreement.**   This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties.  Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision

3

to accept this Agreement, except for those set forth in this Agreement.

11.    **Counterparts and Facsimiles.**    This Agreement may be executed in counterparts, which together shall constitute a single Agreement. Each party may execute this Agreement and transmit it to the other party by facsimile, with each such facsimile deemed to be in all respects an original, manually executed document.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT.  EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By: _____
Alexander Case

Life Time, Inc.

By: _____
Erik Lindseth
Senior Vice President and General Counsel

Date: _3/20/18_____

Date: _3/26/18_____

4842-0230-6142, v. 1

4